WILLIAM H. McCREERY, APPELLANT, V. JACOB SCHAF-
FER, JULIA SCHAFFER, LUTHERAN ZION CHURCH,
BENJAMIN FREDENBERG, J. M. IRVIN, JOHN H.
POHLMAN, RUSSELL & HOLMES, ADAM WAGNER,
JULIUS GRUBE, HENRY L. YOUNG, JOHN SCHNEI-
DER, JOHN S. STULL, CARSON BANK, FIRST NA-
TIONAL BANK OF BROWNVILLE, NEBRASKA, W. C.
JOLLY, L. G. SWAN, J. S. DEW, J. H. HARDING,
THOMAS J. ALEXANDER, DAVID CAMPBELL, AND
PHENIX INSURANCE CO., APPELLEES.

[FILED MARCH 20, 1889.]

1. **Homestead:** MORTGAGE. A mortgage on a tract of land, includ-
ing a homestead, executed by a married man without the con-
currence and signature of the wife, is invalid for the purpose of
impairing, disencumbering, or in any manner effecting such
homestead or its appurtenances. (See *Swift v. Dewey*, 20 Neb.
107.)

2. ———: ———. If the husband and wife own a tract of land, a
part of which is claimed as a homestead, and both execute a
mortgage on the whole tract to secure a debt, and the husband
afterward executes a mortgage upon the part not covered by the
homestead, to secure his debt, and judgments are rendered or
filed in the district court against the husband, and the first
mortgagee forecloses, making the other mortgagees and judgment
creditors parties, the second mortgagees and judgment creditors
cannot insist that the homestead be sold; and the decree will di-
rect the part not covered by the homestead to be first sold, and if
the proceeds satisfy the first mortgage, that the homestead be re-
served from sale. The second mortgagees and judgment credit-
ors must rely on the surplus, if any, arising from the sale of the
part not exempt from execution as a homestead.

3. ———: ———: FORECLOSURE: TAXES. Where the plaintiff, who
is the assignee of the first mortgagee, purchased the mortgaged
property at tax sale, prior to the transfer of the note and mort-
gage to him, and the mortgage so transferred contains a provi-
sion that in case of default on the part of the mortgagor to pay
the taxes, the mortgagee may pay them and be entitled to legal
interest thereon at the same rate as is provided for on the original

debt, the plaintiff, upon the foreclosure of the mortgage and tax lien, will be entitled to interest at twenty per cent upon the amount so paid, prior to the transfer of the note and mortgage to him, under the provisions of section 119 of the revenue law; but upon taxes paid subsequent to the transfer of the mortgage, he will be entitled to interest at the legal rate therein stipulated, no effort being made to obtain title through the tax-sale proceedings.

APPEAL from the district court of Nemaha county. Heard below before APPELGET, J.

*W. H. Kelligar,* and *Stull & Edwards,* for appellants, cited: *Chapman v. Lester,* 12 Kas. 592; *Searl v. Chapman,* 121 Mass. 19, cited in "Thompson on Homesteads;" *Green v. Ramage,* 51 Am. Dec. 458, (18 Ohio, 469;) "Relative Rights of Lienors," *Cheesebrough v. Millard,* 7 Am. Dec. 494; *Rector v. Rotton,* 3 Neb. 176; *McHugh v. Smiley,* 17 Id. 626; *Searl v. Chapman,* 121 Mass. 19; "Thompson on Homesteads and Exemptions," sec. 657, p. 658; *Swift v. Dewey et al.,* 20 Neb. 109.

*E. W. Thomas,* and *G. W. Cornell,* for appellees, cited: *McHugh v. Smiley,* 17 Neb. 623; *Bonorden v. Kriz,* 13 Id. 122; *Showers v. Robinson,* 43 Mich. 502; *Riggs v. Sterling,* (Mich.,) 27 N. W. R. 708; *Sherrid v. Southwick,* 43 Mich. 515; *Riggs v. Sterling,* (Mich.,) 27 N. W. R. 705; *McClure v. Braniff,* (Iowa,) 39 Id. 172–3; *Eagle Insurance Company v. Pell,* 2 Edw. Ch. 631; *Schoenheit v. Nelson,* 16 Neb. 237; *Lee v. Gregory,* 12 Id. 284; *Colby v. Crocker,* 17 Kas. 527; *LaRue v. Gilbert,* 18 Id. 220; *Sproul v. Atchison Nat. Bk.,* 22 Id. 336; Thompson on Homestead, sec. 663; *Larson v. Butts,* 22 Neb. 370; *Aultman v. Jenkins,* 19 Id. 211; *Swift v. Dewey,* 20 Id. 107.

REESE, CH. J.

Stated in the order of their occurrence, the facts which have given rise to this litigation are as follows:

On the 4th day of September, 1876, Jacob Schaffer was the owner of the south half of section one, township five north, of range twelve, in Nemaha county; was the head of a family and resided on the south half of the southwest quarter of said section. On that day he executed a mortgage to John Schneider, upon the southwest quarter of the section named, to secure the sum of $552, due two years thereafter. This mortgage was not signed by Julia Schaffer, his wife. On the 30th of August, 1880, Schaffer and wife joined in the execution of a mortgage upon the whole tract of land, to one Luther Hoadley, to secure the sum of $600, due in five years thereafter. On the 17th day of January, 1884, Schaffer and wife executed a mortgage upon the same property to Benjamin Fredenburg, to secure the sum of $800, due in two years. During that year and prior to the execution of the mortgages hereinafter referred to, Julia Schaffer became insane, and was confined in the insane hospital, where she now remains. On May 5th, 1884, plaintiff bought the whole of the real estate at tax sale, for the delinquent taxes of 1882, and paid the subsequent taxes, for which he seeks a foreclosure in connection with the foreclosure of his mortgage. On the first day of November, 1884, Schaffer, alone, executed a mortgage on the whole of the property in question, to Russell & Holmes, to secure the sum of $500, due in one year. On the 2d day of October, 1885, he executed another mortgage, to John H. Pohlman, to secure the sum of $500, due in one year. On the 8th day of May, 1886, he executed a mortgage on the southwest quarter of the section named, to Henry L. Young, to secure the sum of $150, due in one year.

Plaintiff is the assignee of the Hoadley mortgage, and instituted this suit for its foreclosure, together with that of his tax lien. Defendants Stull, Alexander, Campbell, Carson National Bank, First National Bank of Brownville, Phenix Insurance Company, and Costello, judgment cred-

itors of Schaffer, are made parties to the action, for the purpose of foreclosing their liens:

The defendants holding liens upon the real estate, whether by mortgages or judgments, filed their answers, in' which their several claims were presented. To plaintiff's amended petition, and the various cross-petitions filed by defendants, Schaffer answered that he was a married man, the head of a family, a resident of Nemaha county, and that for seventeen years prior to the commencement of the action he had occupied the southwest quarter of the section referred to as his homestead, and that the same was exempt. to him and to his family, as such homestead, as against all the judgments and the mortgages unexecuted by his wife, Julia Schaffer; and asking that the same be declared to be exempt. It was alleged that the mortgages executed by himself alone, in so far as the family homestead was concerned, were void, and the judgments pleaded by a part of the defendants created no lien thereon.

An answer was also filed by the guardian *ad litem* of Julia Schaffer, presenting substantially the same issues.

It is not thought necessary to refer at greater length to the pleadings in the case.

Upon a trial being had, the district court found that plaintiff was entitled to substantially the relief prayed for in his petition, and that he had a first lien on each quarter section for the taxes paid, and on which he was entitled to interest at the rate of ten per cent per annum; that defendant John Schneider, who held the mortgage executed by Schaffer alone on the southwest quarter of the section, and bearing date September 4, 1876, was entitled to a second lien upon the north half of the said southwest quarter; that plaintiff was entitled to a second lien on the southeast quarter, and a third lien on the north half of the southwest quarter; the south half of the southwest quarter being found to be worth two thousand dollars, and to be the homestead of defendant Schaffer. The mortgages signed by Schaffer

alone, and the judgments against him, were declared liens upon all of the land except the south half of the southwest quarter, (the homestead,) and their priorities stated. It was ordered that the mortgages which are liens upon the homestead, should be satisfied, if possible, out of the land included therein but not subject to the homestead exemption; and in case such satisfaction could be made, the homestead should be protected; otherwise it should be sold only for the purpose of satisfying the deficiency.

The defendants holding mortgages signed by Schaffer alone, being dissatisfied with this part of the decree, appeal therefrom. Plaintiff being dissatisfied with that portion of the decree which gives him but ten per cent interest upon the taxes paid, appealed therefrom. Defendant Schaffer makes no objection to the decree, and there is no objection offered by any one to the decree so far as it relates to the Schneider mortgage.

The contention on the part of the appealing defendants seems to be that since Schaffer and wife have legally incumbered their homestead by the mortgages to Hoadley and Fredenburg, the homestead property should be made to bear its equitable portion of the indebtedness secured by such mortgages, and that the decree of the court requiring the other mortgaged property to be exhausted before the homestead could be sold, was erroneous as against the lien holders, who could maintain no right as against the homestead.

The principal question here presented is whether or not the homestead right is such an interest as will entitle its owner to require a mortgagee to exhaust other mortgaged property before subjecting it to the payment of any portion of the debt secured by the mortgage as against the rights of subsequent incumbrancers having no claim upon the homestead property.

By section 17 of chapter 36 of the Compiled Statutes, the homestead right is made such an interest in the real estate

as upon the death of the person from whose property it is selected, it will vest in the survivor for life, and afterward in his or her heirs forever. This interest or title is exempt from sale on execution, and is for the benefit of the family residing upon the land, the right or title to which is vested in the head of such family. It is not subject to alienation by the holder of the legal title, unless the instrument by which it is conveyed or incumbered is executed and acknowledged by both husband and wife. Such mortgage when signed by the husband or wife alone, the other being alive, is void as to such homestead. (*Bonorden v. Kriz*, 13 Neb. 121.) The claims of appellants seem to be founded upon the principle that where a person has a lien upon two or more funds to secure the payment of a debt, on one of which another person has a similar lien, equity will require the first-mentioned person to satisfy his lien so far as he can from those funds on which the other person has no claim; but we know of no rule which will extend the doctrine to the length of destroying vested rights upon which the second lien-holder has and can have no claim were the first not in existence. It must be conceded that the mortgages executed by Schaffer alone were void as against the homestead, and that the judgments rendered against him created no lien thereon. This being true, such mortgagees and judgment creditors could have no interest in the homestead, no lien thereon, and were entitled to no remedy as against it.

This question was before the supreme court of Kansas in *Colby v. Crocker*, 17 Kas. 527, and it was there held, (Judge Valentine quoting from Judge Story, in his Equity Jurisprudence, section 560,) that the equitable rule above stated is " never applied except where it can be done without injustice to the creditor, *or other party in interest having title to the double fund,* and also without injustice to the common debtor. Nor does it apply in favor of persons who are not common creditors, except upon some special

equity." And in the case referred to, it was held that the subsequent judgment creditor had no such superior equities over the family of the deceased mortgagor, as occupiers of the homestead, as could be enforced either in law or equity, and that the mortgagee of the homestead with other property could not be compelled to exhaust the homestead in payment of his mortgage before resorting to other property belonging to the estate.

The rule in this case was followed by *LaRue v. Gilbert*, 18 Kansas, 220. In that case Brewer, judge, in writing the opinion of the court, says: "The preservation of the homestead is under the policy of our law considered of more importance than the payment of debts. That is what a homestead means — exemption from debts. It is not so much for the debtor as for the debtor's family. And the family of the debtor have, in this respect, equities superior to the creditor. In giving a mortgage on a homestead, the debtor waives this homestead right, but only to the mortgagee, and does not thereby open the door to other creditors or increase their equities."

The same question was before the supreme courts of California, Illinois, and Minnesota, and like decisions were reached. (*McLaughlin v. Hart*, 46 Cal. 638; *Brown v. Cozard*, 68 Ill. 178; *McArthur v. Martin*, 23 Minn. 74.)

A different conclusion seems to have been reached by the supreme courts of other states, cited by appellants, the most of which are cited in Thompson on Homesteads and Exemptions, sections 656–659, but we think the doctrine stated in the authorities referred to in section 660 *et seq.* are more in consonance with the principles of our homestead laws, and especially of the statutory provisions of this state.

A homestead right being a superior right as against all the creditors except those to whom a legal mortgage had been executed upon it, the decree of the district court re-

quiring the satisfaction of such mortgages by the sale of the property included therein and not exempt, was correct.

The mortgage executed to Hoadley, and for the foreclosure of which this suit was instituted, contained the following provision :

"The said first party further agrees that he will pay all taxes and assessments levied upon said real estate, and also upon all personal property owned by him and subject to taxation, within three months after the same shall become delinquent; and if not so paid, the holder of this mortgage may declare the whole sum of money herein secured due and collectible at once, or he may elect to pay such taxes or assessments and be entitled to interest on the same at the rate of ten per cent per annum, and this mortgage shall stand as security for the amount so paid, with interest as above specified."

The note and mortgage were assigned to plaintiff, on the 24th day of June, 1884. On the 5th day of May preceding, the southeast quarter of said section one was sold by the county treasurer to plaintiff, for $29.33, being the taxes of 1882, which were then delinquent, and on the same day he paid the sum of $20.70, the taxes of 1883, making a total of $50.03. On the same day he purchased at tax sale the southwest quarter of said section, paying therefor the sum of $29.69, the taxes for 1882, then delinquent, and also the taxes of 1883, amounting to $20.70, making a total of $50.39; the whole amount of said payments being $100.42. He paid the taxes which subsequently matured as they became due, but all of which were paid after the assignment of the note and mortgage to him. By the decree of the district court, he was allowed interest upon the whole of the taxes paid at the rate of ten per cent per annum from date of payment, instead of twenty per cent as provided by section 119 of the revenue law of the state. This ruling is assigned for error by plaintiff. It is contended by the appellee that it is shown by the record that plaintiff was

the owner of the mortgage at the time of the purchase of the land at tax sale, but we are unable to find any proof of that fact.   As is shown by the bill of exceptions, it was stipulated upon the trial that the note and mortgage were assigned to plaintiff on June 24, 1884.   The county treasurer's certificates of tax sale are dated the 5th day of May, 1884, and this is all the evidence we are able to find upon that subject.   We think the decision of the district court, that plaintiff would be entitled to but ten per cent upon the taxes paid after the assignment to him of the note and mortgage, was correct, but as it appears that the $100.42 was paid prior to the transfer of the note and mortgage, plaintiff would be entitled to interest thereon for two years from the date of payment at the rate of twenty per cent per annum.   The decree will therefore be modified to the extent of allowing plaintiff the sum of $20.08 additional interest on the $100.42 for two years commencing May 5th 1884. As thus modified, the decree will be affirmed.

JUDGMENT ACCORDINGLY.

THE other Judges concur.