HATTIE M. GORDON AND JOHN W. GORDON *v.* THOMAS J. DEAVITT

ET AL.

February Term, 1909.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, AND POWERS, JJ.

Opinion filed November 25, 1910.

*Husband and Wife—Homestead—Mortgages—Rights of Assignee
—Subrogation—Redemption of Senior Mortgage—Contribution
—Persons Entitled.*

A wife is invested with the right to bar her husband from selling or incum-
bering the homestead, and their joint deed thereof is, as to her, not a
conveyance of the title, but a mere release, or waiver, and, in case of
a mortgage, only a legal and binding consent to the incumbrance.

The right of contribution among persons holding interests in lands covered
by a mortgage exists only when their relations to each other are such
that the one who pays the mortgage does so for the benefit of all; but,
if he pays to protect his own interest, and that interest is independent
of, and superior to, the interests of the others, the doctrine of contri-
bution has no application.

The right of contribution among persons holding interests in lands covered
by a mortgage depends, not merely on the fact of a common subordi-
nation to the indebtedness paid, but on the relations that the holders
of the subordinate interests sustain among themselves.

Where a husband and wife, to secure the husband's note, executed to a
bank a mortgage on premises owned by the husband and occupied
by them as a homestead, and subsequently the husband gave another
mortgage on the premises, signed only by himself, in which the home-
stead was excepted, and the assignee of the subsequent mortgage
obtained a decree of foreclosure that became absolute, and thereafter
the bank obtained a decree foreclosing its mortgage, and the wife

redeemed the premises from the bank's mortgage, the wife's concurrence in the bank's mortgage was only a legal and binding consent to the incumbrance, her interest in the homestead being still paramount to any incumbrance that the husband alone could place on the property, and her payment of the bank's decree, pending the time limited therein to redeem, was not a payment in the interest of her husband, did not extinguish the indebtedness, and she was thereby subrogated to all the rights of the bank.

Since the wife's homestead right was superior to any incumbrance that could be placed thereon by the husband alone, she had the right to redeem the property from the incumbrance of the bank's mortgage, in order to hold the property intact as against all mortgages of the premises executed by her husband alone, and she was not required, in order to foreclose against a later mortgage of the premises which she did not sign, to subject the homestead to ratable contribution, as the right to contribution in such cases exists only when the parties stand on an equal footing and are in the same class.

APPEAL IN CHANCERY. Heard at the March Term, 1907, Washington County, on demurrer to the bill, *Miles,* Chancellor Demurrer overruled, bill adjudged sufficient and taken as confessed, and decree for the orators. The defendants appealed. The bill alleges that the oratrix Hattie M. Gordon borrowed from the orator John W. Gordon the money wherewith to pay the bank's decree, and assigned to him her interest therein.

*R. M. Harvey* and *John W. Gordon* for the orators.

The oratrix had the right to pay the bank's decree and become thereby subrogated to its rights. *Davis* v. *Davis,* 81 Vt. 259; *Martin* v. *Harrington,* 73 Vt. 193; *Wood* v. *Hubbard,* 50 Vt. 82; *Charmley* v. *Charmley,* 125 Wis. 297; Jones on Mortgages, §877; *Olmer* v. *Boyer,* 89 Ala. 273; 2 Sheldon on Subrogation, §104; *Walsh* v. *Walsh,* 15 N. W. 1025; 2 Jones on Mortgages, §1067; *Pollard* v. *Noyes,* 60 N. H. 184; *Smith* v. *Hall,* 67 N. H. 27; *Tucker* v. *Kenniston,* 47 N. H. 267; *Fellow* v. *Dow,* 58 N. H. 21; 27 Cyc. 1807, and note 81; *Vaughan* v. *Dowden,* 126 Ind. 406; *Davis* v. *Witherell,* 13 Allen 60, 90 Am. Dec. 177; *Lamb* v. *Montague,* 112 Mass. 352; *Williams* v. *Stewart,* 25 Minn. 516; *Smith* v. *Hall,* 67 N. H. 200; *Atwood* v. *Arnold,*

23 R. I. 609; *Mackenna* v. *Fidelity Trust Co.*, 184 N. Y. 411; *Gatewood* v. *Gatewood*, 75 Va. 407; *Dolin* v. *Coltman*, 1 Vern. Ch. 294; *Gore* v. *Townsend*, 8 L. R. A. 443; *Equitable Life Ins. Co.* v. *Gleason*, 62 Iowa 277; *Drown* v. *Cozard*, 68 Ill. 178; *Grenier* v. *Klein*, 28 Mich. 16; *Fletcher* v. *Holmes*, 38 Ind. 497.

*T. J. Deavitt* and *Edward H. Deavitt* for the defendants.

Assuming that the title to the home place was in the husband at the time of the bank mortgage then the wife did not become a surety for the mortgage debt by joining in the mortgage, even though the debt secured by the mortgage was that of her husband. 1 Brandt Suretyship and Guaranty, §45; *Jenness* v. *Cutler*, 12 Kan. 500; *Hawley* v. *Bradford*, 9 Paige 200; *Tennison* v. *Tennison*, 114 Ind. 424; *Lamb* v. *Mason*, 50 Vt. 345; 2 Jones on Mortgages, §1420.

The redemption by the wife extinguished the bank mortgage. 1 Jones on Mortgages, §792; *Guernsey* v. *Kendall*, 55 Vt. 201. The orator, John W. Gordon, by advancing the money to the wife to redeem the mortgage acquired no greater rights than the wife had. She was neither a surety nor a junior mortgagee, but redeemed in the title and interest of the principal debtor, and hence her assignee has no greater rights. 1 Jones on Mortgages §874 a; *Deavitt* v. *Ring*, 74 Vt. 431; S. C. 76 Vt. 216.

MUNSON, J.   T. R. Gordon and his wife, the oratrix Hattie, executed to the Capital Savings Bank and Trust Company, to secure notes of the said T. R., a mortgage of certain premises owned by the said T. R., and occupied as a homestead. T. R. Gordon afterwards gave three other mortgages of the premises to different parties, signed only by himself, in the first two of which the homestead was excepted. The defendant Deavitt became the assignee of the first of these three mortgages, and brought a foreclosure suit thereon, making T. R. Gordon and the holders of the two later mortgages parties defendant, and obtained a decreee which became absolute. After this, the Bank obtained a decree on its mortgage, foreclosing T. R. Gordon, the oratrix Hattie and the defendant Deavitt. The oratrix Hattie paid the amount of this decree within the time limited

for redemption, and now claims to be subrogated to all the rights of the Bank. The defendant contends that the payment by the wife extinguished the Bank indebtedness; and claims further that if the payment did not have this effect, it merely entitled the wife to a contribution from the other parties benefited thereby.

The homestead of a housekeeper or head of a family consists of a dwelling house, outbuildings and land used in connection therewith, not exceeding five hundred dollars in value, and used or kept by such housekeeper or head of a family as a homestead. V. S. 2179; P. S. 2544. The statute provides that no homestead nor interest therein shall be conveyed by the owner, if a married man, except by way of mortgage for the purchase money, unless his wife joins in the execution and acknowledgment of the conveyance; but that a conveyance thereof, or of an interest therein, not so made and acknowledged, shall be inoperative so far only as relates to the homestead. V. S. 2189; P. S. 2553. It is provided further that when such homestead or lands included therein are mortgaged by the joint deed of husband and wife, the joining of the wife in such mortgage shall have no other effect than to bar her claim to the homestead as against such mortgage; and that if such mortgage includes lands other than the homestead, and the owner thereof dies, such other lands shall be first sold by the executor or administrator and applied on the mortgage, and the residue only rest on the homestead. V. S. 2191; P. S. 2555.

The history and original form of some of these provisions may have a bearing upon the question at issue. In the first homestead act, No. 20, Acts of 1849, the provision regarding alienation, apart from an exception as to purchase money, was as follows: "Such homestead shall not be alienated or mortgaged by the owner thereof, if a married man, except by the joint deed of such husband and wife." By No. 18 Acts of 1858, it was provided that the above section should be so construed that if the homestead, or any lands including the homestead, belonging to a married man, had been or should be mortgaged by the joint deed of husband and wife, the joining therein by the wife should have "no other effect than to bar her right or claim to such homestead as against said mortgage." By No. 36, Acts of 1860, it was enacted that

whenever any deed, mortgage, lease or conveyance of the home-
stead, except mortgages for the purchase money, should be
executed by the owner thereof, if a married man, without his
wife joining therein, such deed, mortgage, lease or conveyance
should be "wholly inoperative to convey any right, title or in-
terest in such homestead," and that the rights of the parties,
and of all persons claiming under them or either of them, should
"be and remain the same as if no such deed had been executed."
This provision was condensed in the revision of 1863, but without
changing its substance. Gen. Sts. Ch. 68, §10. The provision
restricting the effect of the wife's execution of a mortgage
was omitted from that revision, but it was re-enacted by No.
17, Acts of 1865, in terms identical with the act of 1858. Since
then the provision declaring the husband's sole deed of the home-
stead to be wholly inoperative, and that restricting the effect
of the wife's joining in the mortgage, have both been retained;
and they are now included in P. S. 2553 and 2555, as before
stated. In *Abell* v. *Lathrop*, 47 Vt. 375, decided in 1875, it
was said of the section regarding alienation, that "no more
explicit language could be used to negative the right of the hus-
band to convey either his own or his family's interest in the
homestead"; and it was accordingly held that a deed signed by
the husband alone is absolutely void as regards the homestead,
and leaves the title to it as if no deed had been executed. This
decision was questioned in *Whiteman* v. *Field*, 53 Vt. 554, but
the doctrine of the earlier case was reasserted in *Martin* v.
*Harrington*, 73 Vt. 193, 50 Atl. 1074, 87 Am. St. Rep. 704,
and again in *Davis* v. *Davis*, 81 Vt. 259, 69 Atl. 876, 130 Am.
St. Rep. 1035.

The statutes relating to the levying of executions on prop-
erty which includes a homestead must be referred to, because
of their connection with a case relied upon by the defendant.
The homestead right is exempt from attachment and execution
except upon causes of action existing at the time of acquiring
it. Acts 1849, No. 20, §§1, 6; P. S. 2544, 2550. In levying
an execution upon premises in which there is a homestead,
the homestead is to be set out in the manner prescribed, and
levy made upon the residue of the premises as in other cases.
Acts 1849, No. 20, § 2; P. S. 2545. It was enacted further by

Gen. Sts. Ch. 68 § 3, that if such premises were incumbered by a mortgage the homestead should be set out as before provided, and that the levy should then proceed as in the case of mortgages existing upon distinct parcels of land. In *Lamb* v. *Mason*, 50 Vt. 345, a levying creditor, whose claim was not enforceable against the homestead, paid a mortgage which covered the homestead to save his rights under the levy; and it was held by a divided Court that he became subrogated to the rights of the mortgagee, and could charge the homestead with the payment of its proportion of the mortgage debt. Subsequent to this decision, by No. 74, Acts of 1888, the section last above stated was amended by adding to it the following: "Provided, however, in making such levy only such portion of the mortgage as is in excess of the appraised value of the real estate, aside from the homestead, shall rest on said homestead." P. S. 2546. The force of the above decision as authority for a ratable apportionment of the incumbrance at the instance of an attaching creditor who has become assignee of the mortgage, was taken away by this change in the statute. The express restriction of the amendment seems inconsistent with the application of any principle of equity which would increase the burden of the homestead in aid of a creditor whose claim has not been charged upon it in accordance with the statute. Moreover, this Court has said that when equity requires it the court may deny to the assignee of a mortgage a right which the mortgagee himself could have asserted. *Bailey* v. *Warner*, 28 Vt. 87. The question here is whether the holder of a subsequent incumbrance which did not cover the homestead can reach the homestead interest through the wife's redemption of the premises from a mortgage which covered the homestead; and this must be determined upon a consideration of the statute as a whole.

The homestead is an estate or interest created by statute in the property of the husband for the protection of the family. It cannot be conveyed by the husband, "the owner thereof," unless the wife joins in the execution and acknowledgment of the deed. It can be charged with the payment of the husband's indebtedness only by a conveyance so executed. The wife is thus invested with the right to bar the husband from selling or incumbering. Her interest springs from the husband's title,

but is adverse to his right of transfer. The joint deed, as to her, is not a conveyance of the title, but a mere release or waiver. In the case of a mortgage, her concurrence in the execution is no more than a legal and binding consent to the incumbrance. She retains her entire homestead interest subject to that incumbrance, and that interest is paramount to any lien which the husband can place upon the property. *Davis v. Davis*, 81 Vt. 259, 69 Atl. 876, 130 Am. St. Rep. 1035. In view of these considerations, it cannot be said that Mrs. Gordon's payment of the Bank decree was a payment in the interest of her husband, and therefore a payment which extinguished the indebtedness.

But the defendant insists that if the Bank indebtedness is to be kept on foot, the oratrix cannot foreclose against the later incumbrances without subjecting the homestead to a ratable contribution. The right of contribution among persons holding interests in lands affected by a mortgage exists when their relations to one another are such that the one paying pays for the benefit of all. If one pays to protect his own interest, and that interest is independent of and superior to those of the others, the doctrine of contribution has no application. The right depends not merely upon the fact of a common subordination to the indebtedness paid, but upon the relations which the holders of the subordinate interests sustain among themselves. Both points must be considered in determining whether the parties stand upon the equal footing essential to contribution.

The oratrix and the defendant are not in the same class. The homestead right is superior to any lien that can be placed upon the property by the husband alone; and while that right is existent it can be asserted by the wife, regardless of the husband's position or attitude. The connection of the oratrix in her marital capacity with the inception of the Bank mortgage as security for her husband's debt, did not debar her from the privilege of redeeming the property in her separate capacity. In doing this she assumed no obligation to the defendant as the holder of a subsequent mortgage of her husband. She had a right to redeem the property for the purpose of holding the homestead intact as against his and all mortgages which she had not signed. The rights of the oratrix and the defendant

are not shares in an undivided equity, but separate equities in undivided property. This will appear from considering the effect of variations in the value of the premises. An increase in value would increase the defendant's equity, but not the equity of the oratrix. A decrease in value might wipe out the defendant's equity without impairing the equity of the oratrix. It is true that the homestead is an inchoate interest while the husband lives, but if the law does not protect it in its inchoate state it will never survive to become anything more. The arguments based upon the power of the husband to defeat the homestead right by abandonment or the acquisition of another homestead were fully presented in *Whiteman* v. *Field,* before cited; but when reviewed in *Martin* v. *Harrington,* they were not considered sufficiently potent to require an abandonment of the doctrine announced in *Abell* v. *Lathrop.*

It seems inconsistent with the whole tenor of the homestead law to give a mortgage executed by the wife an effect beyond its terms  because of subsequent mortgages executed by the husband alone. Moreover, the statute expressly provides that her joining in the execution of a mortgage shall have no other effect than to bar her claim to the homestead as against such mortgage. Furthermore, the Court has declared that a mortgage of the homestead given by the husband alone is void, and leaves the title as if it had not been made. Yet, upon the defendant's theory the execution of a mortgage  to secure a specific and limited obligation will subject the wife's interest to the imposition of further burdens by as many subsequent mortgages as the husband may see fit to execute. We think these considerations plainly indicate that the doctrine of contribution is not applicable.

There are a number of cases in other jurisdictions which support these views, some of which are directly in point. In North Carolina, where the wife has dower in the lands of which the husband is seized during coverture,  it is said that although a wife who releases her dower to secure her husband's debt is not technically a surety for the husband, equity will treat her as such. *Gore* v. *Townsend,* 105 N. C. 228, 11 S. E. 160, 8 L. R. A. 443. It was said by the same court in *Wilson* v. *Patton,* 87 N. C. 318, where a marshalling of  the fund was

claimed by execution creditors, that the rule referred to has no application to a case where the homestead is involved; that the homestead right is an equity superior to all other equities. It is said in *McArthur* v. *Martin*, 23 Minn. 74, that when the rule for marshalling assets will indirectly subject the homestead to the payment of debts not otherwise charged upon it, a court of equity will not apply it. It is said in *First National Bank* v. *Browne*, 128 Ala. 557, 29 South. 552, 86 Am. St. Rep. 156, that neither the rule for marshalling assets nor the fiction of subrogation will be applied to subject the homestead to incumbrances not created by the debtor himself. Where the husband and wife had given a mortgage of lands which included the homestead, and another mortgage of the premises had been given by the husband alone, it was said that the second mortgage gave its holder no right to have the liability of the homestead increased, and that it would not do to allow any fiction or theory to subvert rights secured by the statute. *Armitage* v. *Toll*, 64 Mich. 412, 31 N. W. 408. It is said in the case last cited that the wife has as much right to protect the homestead rights of herself and family as the husband has; that the execution of a mortgage upon the homestead by husband and wife operates to release the homestead right only to the extent necessary to satisfy the mortgage; and that the law will not construe the mortgage into an agreement to carry an increased liability. In *McCreery* v. *Schaffer*, 26 Neb. 173, 41 N. W. 996, husband and wife had mortgaged a tract of land which included their homestead, and it was contended by subsequent mortgagees of the husband that the homestead property should be made to bear its share of the indebtedness secured by the conveyance of both. The decree below required that the property not exempt be first exhausted, and in sustaining this decree it was said that the homestead right is superior to the rights of all creditors except those to whom it has been legally mortgaged; that a mortgage executed by the husband alone is void as against the homestead; and that this being so such mortgagees can have no interest in the homestead, no lien upon it, and no remedy as against it. In *Brown* v. *Cozard*, 68 Ill. 178, the court remarked that the object of the suit was to make the release of the homestead exemption, which had been made to the mortgagee, op-

erative for the benefit of a judgment creditor, to whom there had been no release; and said that the relief sought would be in violation of the intent of the statute, which was that the homestead right should not be injuriously affected on account of any indebtedness without an express assent. In *LaRue* v. *Gilbert,* 18 Kan. 220, a mortgage of premises which included the homestead was foreclosed by the mortgagee, and it was ordered in the decree, with his consent, that the real estate other than the homestead be sold first. This order was contested by a judgment creditor, who insisted that the homestead be sold first. The court held the order proper, and said that in giving a mortgage on the homestead the debtor waives the homestead right to the mortgagee only, and does not thereby open the door to other creditors, or increase their equities. In *Vincent* v. *Vineyard,* 24 Mont. 207, 61 Pac. 131, 81 Am. St. Rep. 423, it is said that the mortgage of a homestead operates as a waiver of the homestead exemption in favor of the mortgagee and those claiming under him, but that the waiver does not inure to the benefit of other persons; that the execution of the mortgage is not an agreement that other debts may be satisfied out of the exemption; and that to require the mortgagee to satisfy his debt out of the homestead would be to subject the homestead indirectly to the payment of debts not properly chargeable upon it. In *McLaughlin* v. *Hart,* 46 Cal. 638, the husband and wife joined in the execution of a mortgage of premises which included the homestead, and the husband afterwards mortgaged the part not covered by the homestead; and the court held that in foreclosing a mortgage signed by the wife the part not covered by the homestead should be sold first; saying that the outside lands constituted, to the extent of their value, a security against the possible sacrifice of the homestead to pay the debt resting upon it, and that this security could not be impaired to the wife's injury without her consent. In *Charmley* v. *Charmley,* 125 Wis. 297, 103 N. W. 1106, 110 Am. St. Rep. 827, it was thought to be established by authority, and apparent without authority, that when the homestead is incumbered by a mortgage given to secure the husband's debt, and the wife pays it, not on his request, but solely to protect her homestead right, she becomes subro-

gated to the rights of the mortgagee. The precise point before us has arisen in New Hampshire; and it is there held that when a married woman who has joined her husband in the execution of a mortgage covering the homestead redeems from that mortgage, equity will preserve her homestead interest unaffected by a second mortgage in which she has not joined, by subrogating her to the rights of the first mortgagee; that the equity of the wife is superior to that of the second mortgagee, and that no contribution will be required. *Smith* v. *Hall*, 67 N. H. 200, 30 Atl. 409; *Pollard* v. *Noyes*, 60 N. H. 184.

*Decree modified, and affirmed as modified; and cause remanded with directions that the homestead be set out as provided by statute, and that the remainder of the premises be appraised, and that defendants pay for the benefit of the orators the amount of said appraisal, or such part thereof as will equal the redemption payment and interest, with costs, by a day to be fixed by the court, or be foreclosed.*

WATSON, J., dissenting:

I am unable to concur in the opinion and the decree in this case.

In the opinion of the majority, the case is considered and determined upon the basis that defendant Deavitt stands as the owner of a subsequent mortgage executed by Truman R. Gordon, alone, on so much of the premises covered by the mortgage from Truman R. Gordon and his wife, the oratrix Hattie M., to the Capital Savings Bank and Trust Company, as is outside of the homestead parcel. Whereas the facts stated in the first part of the majority opinion show, as do also the allegations in the bill, that before any proceedings were instituted by the bank to foreclose its mortgage, Deavitt, by virtue of an assignment to him of the mortgage from Truman R. to David L. Fuller, and by decree foreclosing the same, allowed to become absolute, was, and hitherto has been, the sole and absolute owner of the equity of redemption of that portion of the premises covered by the bank's mortgage not of the homestead. This makes Deavitt by operation of law such owner by purchase. *Perry* v. *Ward*, 82 Vt. 1, 71 Atl. 721.

The case before us then may be correctly stated thus: Real estate owned by the husband, which included his homestead and other land, was mortgaged to the bank by the joint deed of husband and wife to secure his debt. By purchase defendant Deavitt became the sole and absolute owner of the equity of redemption in that portion of the premises other than the homestead. In proceedings then brought by the bank to foreclose its mortgage, the husband and wife and Deavitt being made parties defendant therein, a decree was rendered for the bank, fixing a time in which the defendants might redeem.

Within the time thus allowed, the wife, to protect her interest in the homestead, redeemed by paying the amount of the decree and costs. Claiming to be subrogated to the rights of the bank by reason of such payment, she now seeks to have a homestead set off, and that the burden of the entire mortgage be placed upon the other land to the exoneration of the homestead. A decree to this effect was rendered below, and the same (with modifications not necessary to mention) is affirmed by a majority of this Court.

By P. S. 2553, no homestead nor any interest therein can be conveyed by the owner thereof, if a married man, except by way of mortgage for the purchase money, unless his wife joins in the execution and acknowledgment of such conveyance. By P. S. 2555, the joining of the wife in a mortgage of such homestead can have no other effect than to bar her claim to the homestead as against such mortgage. Is not this latter provision of the statute (which has been in force since 1865) tantamount to saying that as against such mortgage her claim to the homestead shall be barred?

In *Lamb* v. *Mason*, 50 Vt. 345, decided in 1877, the homestead and other property lying together as one property were mortgaged by the homesteader for part of the purchase money. Later an execution against him, in favor of a creditor whose debt was contracted after the purchase of the homestead, was levied upon the land. The homestead was set off to the debtor, and the rest of the property was set off to the execution creditor. Subsequently the latter was obliged to pay the whole of the mortgage, and the question before the Court was, whether he could compel the homestead to contribute. Barrett, Chancellor,

rendered a decree below ordering contribution by the owner thereof, or failing, that he be foreclosed. The case was heard in this Court before Judges Pierpoint, Royce, Redfield, Ross and H. Henry Powers. The decree was affirmed upon an opinion by Judge Powers, the Court saying it presented the not unusual case of a burden resting upon two distinct parcels of land; and that in such cases equity compels each parcel to its just contribution towards the discharge of the common burden. Judge Ross dissented, and his opinion was approved by Judge Dunton who was not a member of the Court when the case was heard. Later the case of *Devereaux* v. *Fairbanks*, 50 Vt. 700, was heard at a session of this Court in Windsor County before Judges Pierpoint, Redfield, Ross, Powers and Dunton. That was a petition for foreclosure. The first mortgage, executed by the homesteader, was for the purchase money. The petitioners having subsequent mortgages (not signed by the wife of the mortgagor) and attachments on the premises, paid the first mortgage, took a transfer of the notes and mortgage, and became the owners thereof. The mortgagor by answer and by cross-bill alleged that the mortgage covered the homestead claimed by him under the statute and occupied by himself and wife, and their minor children; that the petitioners became the owners of the premises, worth $2500, by foreclosure of another mortgage against him, subject to his homestead right therein; and praying that the first mortgage, if held to cover the homestead, be apportioned between the two properties. The facts thus alleged stood admitted on the record by demurrer to the cross-bill. The petitioners, denying such right of apportionment, sought to enforce the full amount of the mortgage against the homestead. It was held by a unanimous Court, the same judge writing the opinion, that the case was identical in principle with *Lamb* v. *Mason;* that "as between the petitioners and the defendant, each owns a parcel of land upon which rests a common burden. In equity, each parcel must contribute ratably to its discharge;" that the estate of the petitioners was obligated to pay its equitable share of the debt, and to that extent they paid what they were bound and ought to pay; that in addition thereto, they paid what the homesteader was bound and ought to pay, and that the latter sum might be charged upon the homestead; but

that they could no more compel the homesteader to give them an indefeasible title to the residue, than could the homesteader compel them, under like circumstances, to give him such title to the homestead parcel.   At the February term, 1888, of this Court in Windsor County, the case *In re Worcester's Estate*, 60 Vt. 420, 15 Atl. 336, was heard before Judges Ross, Veazey, Taft, and Tyler.   At the time of the intestate's (the homesteader's) death the real estate of which he died seized, consisting of his home farm and a pasture, was encumbered by a mortgage executed by himself and wife, amounting to $1,093.27. The premises were sold by order of probate court, the widow consenting,—the farm for $1330, and the pasture for $150.   The statute then was, that at the death of the husband the homestead should pass to and vest in the widow or minor children, or both, if such there were, who took the same estate therein of which he died seized, without being subject to the payment of his debts, unless charged thereon in his lifetime.   R. L. sec. 1898. It was held by an undivided Court, Judge Taft writing the opinion, that the consent by the widow to the sale of the real estate did not bar her of such right in and to the homestead as she took upon the decease of her husband; and, on the authority of *Lamb* v. *Mason* and of *Devereaux* v. *Fairbanks*, it was further held that the homestead was under the burden of bearing its proportion of the mortgage debt.   Thus by the decisions in these three cases the rule requiring ratable contribution by the homestead became the settled doctrine in  this State, and it has so remained without modification, except that its application is now somewhat limited by statutory provisions of more recent enactment, as follows:

At its first session after the decision in the last of said cases was handed down, the Legislature, presumably with knowledge that such doctrine had been so established (*State* v. *Rutland R. R. Co.* 81 Vt. 508, 71 Atl. 197), enacted No. 74 of the Laws of 1888.   By that act, the statute, in respect to the levy of executions on real estate of which a homestead is a part, was amended by adding a provision, that in making such levy only such portion of the mortgage as is in excess of the appraised value of the real estate, aside from the homestead, shall rest on the homestead.   By the same act, section 1906 of the Re-

vised Laws, which reads thus: "If such homestead or lands therein are mortgaged by the joint deed of husband and wife, the joining of the wife in such mortgage shall have no other effect than to bar her claim to such homestead," was amended by adding at the end of said section the following words: "And if said mortgage includes lands other than the homestead and the owner of the homestead dies, the lands other than the homestead, included in said mortgage, shall be first sold by the executor or administrator and applied on the mortgage, and only the residue shall rest on the homestead unless the whole is ordered to be sold by the probate court, in which case the avails shall be apportioned in accordance with this act."

The language of the amendatory act is too plain to be misunderstood. By that act the doctrine of contribution, as established by the three cases named, was limited in its application so as to require the parcel of land other than the homestead to be exhausted in the payment of the common mortgage before resort can be had to the homestead parcel (1), when the former is taken by an execution creditor of the homesteader; and (2) when the homesteader dies, and the homestead passes under the statute to his widow. These instances are expressly mentioned, and to that extent the matter of contribution is now controlled by the same statutory provisions. P. S. 2546, 2555. But the law applicable during the lifetime of the owner of the homestead, as between the homestead parcel and the residue of the mortgaged premises, the equity of redemption in the latter being owned by the homesteader's grantee without assumption of the mortgage debt or any part thereof, remains unchanged. If the Legislature intended that the act of amendment should apply during the lifetime of the owner of the homestead as well as after his death, why were not the provisions thereof made of general application in this respect, instead of the restrictive one therein specified? Such intention, however, is negatived by the act itself, under the rule, often applied in the interpretation of statutes, that the mention of one thing implies the exclusion of another. *Sherwin* v. *Bugbee,* 16 Vt. 439; *Hackett* v. *Amsden,* 56 Vt. 201; *In re Conditional Discharge of Convicts,* 73 Vt. 414, 51 Atl. 10, 56 L. R. A. 658. It follows that the case at bar is unaffected by the Act of 1888, and that

the cases of *Lamb* v. *Mason, Devereaux* v. *Fairbanks,* and *In re Worcester's Estate* are controlling.

It is held by the majority, however, that there is an inequality of equities, and consequently the rule of contribution does not apply. But an examination of the question does not sustain this position. When the husband is the general owner of the real estate, the wife has only a contingent or inchoate right in the homestead. No part of the title is vested in her. Subject to such conditional interest in favor of the wife, the whole legal interest and title are in the husband. *Howe* v. *Adams,* 28 Vt. 541; *Davis* v. *Andrews,* 30 Vt. 678; *Thorp* v. *Thorp,* 70 Vt. 46, 39 Atl. 245. In *Jewett* v. *Brock,* 32 Vt. 65, it is said that this homestead exemption is nothing more than an *inchoate lien* upon the estate of the husband in her favor, and is subject to contingencies. In *McClary* v. *Bixby,* 36 Vt. 254, 84 Am. Dec. 684, it is said to be a conditional lien or incumbrance upon the title or estate of the husband in favor of his wife and minor children. In *Abell* v. *Lathrop,* 47 Vt. 375, one question was, whether the wife and minor children were properly joined with the husband in equity proceedings for the protection of the homestead against a mortgage thereon by the sole deed of the husband. It was held that they had a right of occupancy in the homestead, and were properly joined with the husband in a bill brought to arrest proceedings which threatened such occupancy. And in *Heaton* v. *Sawyer,* 60 Vt. 495, 15 Atl. 166, it was held that the wife takes this contingent or inchoate right through her husband, the head of the family, because of her relation to him.

The wife's interest being thus defined by the numerous decisions of this Court, upon what equitable basis is the oratrix in this case entitled to the exoneration of the homestead from the common burden? There can be no doubt that for the protection of her homestead interest, thus defined, she had a right to pay the decree and regard the transaction as an equitable assignment of the mortgage to her, and the lien thereof as kept alive so far as necessary for her protection against the owner of the premises outside of the homestead. Mr. Pomeroy says that in general, whenever the redemption by a person interested in the premises "operates as an equitable assignment of the mortgage to himself, he can keep the lien of it alive as

security against others who are also interested in the premises
and who are bound to contribute their proportionate shares.
of the sum advanced by him, or are bound, it may be, to wholly
exonerate him from and reimburse him for the entire payment."
3 Pom. Eq. Jur. sec. 1221; *Wheeler* v. *Willard*, 44 Vt. 640; *Dan-
forth* v. *Smith*, 23 Vt. 247.

However, the right of the oratrix to contribution or, if it
may be, to the exoneration of the homestead, does not depend
upon the rights of the mortgagee, which passed to her by the
equitable assignment (see *Charmley* v. *Charmley*, 125 Wis.
297, 103 N. W. 1106, 110 Am. St. Rep. 827), but "necessarily
depends upon the equities subsisting between all those persons
who have an interest in the premises subject to the mortgage,
and who therefore have a *common*, but not necessarily an *equal*,
interest in being relieved from the burden of the mortgage."
3 Pom. Eq. Jur. sec. 1221. And further in Note ·2 to the same
section, the author says: "The nature and extent of the lia-
bility to contribute are primarily independent of the mortgagee,
and depend upon or are controlled by the equities subsisting
between the various parties interested in having the mortgage
redeemed, which equities primarily arise from their several
relations with the mortgagor, or from their dealings with each
other."

Is there, as held by the majority, such an inequality of
equities in the circumstances of the case under consideration
as takes it out of the general rule of equity requiring each separate
portion of the fund to contribute ratably to the discharge of
the common burden, and creates in favor of those interested
in the homestead a right of exoneration as against the owner
of the other property? From the holding in *Heaton* v. *Sawyer*
that the wife takes her contingent or inchoate right in the home-
stead through her husband, because of her relation to him,
it must follow, logically, that her right of homestead is no greater,
and is no more to be protected against a mortgage by their joint
deed than is his. By signing the deed she waived her right
of homestead as against that mortgage—to use the implied lan-
guage of the statute, her claim to the homestead as against
that mortgage was barred. Consequently under the mortgage
each of the two properties was primary security in equity.

They stood alike with reference to the mortgagor and with reference to each other—their equities were equal. The husband had a right by his sole deed to convey the equity of redemption in the parcel not of the homestead, but in so doing he could not increase the burden of the incumbrance upon the homestead parcel. And since the purchaser of such equity of redemption took and holds it subject to the common mortgage, but without assuming its payment, the two properties alike continue to be primary securities for the mortgage debt, the same as before, and the equities among the several persons interested in the mortgaged premises are equal. In *Witherington* v. *Mason*, 86 Ala. 345, 5 South. 679, 11 Am. St. Rep. 41, the court said: "When she (wife) voluntarily signs and assents to a mortgage of the homestead by the husband in the manner required by the statute, it loses its character of homestead as against the mortgagee, and becomes subject to all his rights and remedies. The homestead is not secondarily liable. * * * * As the husband, to whom the homestead belonged, and in whose favor the exemption is created, has no right to compel the mortgagee to exhaust property other than the homestead before resorting to the latter, *a fortiori* the wife who derives the benefit of the homestead exemption only through the right of her husband, has no such right." *Searle* v. *Chapman*, 121 Mass. 19; *Hall* v. *Morgan*, 79 Mo. 47.

Moreover, the consequences of the result reached by the majority are most inequitable. It must be borne in mind that the mortgage debt is the debt of the husband, the homesteader, for the payment of which no one else is personally liable. By placing the entire burden of the mortgage on that portion of the premises outside of the homestead, as the majority do, the homestead parcel is made free and clear of incumbrance for the benefit of, not the wife, for she will still have only an inchoate interest therein, but the husband who is the owner thereof, and who is himself the sole debtor and liable for the whole mortgage debt; and he tomorrow may abandon the homestead, sell it, and pocket the money.

If it be said that with only a contribution by the other property the oratrix is not fully protected, because she still has not been repaid the proportionate share resting upon the

homestead parcel, the complete answer is, that no reason exists why the payment of such proportionate share may not be enforced by her against the latter in the same manner as the other proportionate share is enforced against the former. She can enforce the payment of the ratable share of either only by way of the mortgage lien kept alive in equity for her benefit. *Charmley* v. *Charmley,* 125 Wis. 297, 110 Am. St. Rep. 827, 103 N. W. 1106.

Therefore, I think that by the settled law of this State, and upon principle, the homestead parcel and the residue of the property should each bear its proportionate share of the sum paid by the oratrix to redeem the mortgaged premises; and that the decree should be reversed and cause remanded with mandate accordingly.

ROWELL, C. J., dissenting: I agree to the views expressed by Judge WATSON.